IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **DAVID T. DOBBS,** *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> **ALLSTATE INDEMNITY COMPANY,** <br><br> *Defendant.* | **CIVIL ACTION NO.** <br> **5:18-cv-00309-TES** |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY**

On or about August 6, 2016, a fire ("the Fire") occurred at the residence located at 4846 Union Church Road, Fort Valley, Georgia ("the House"), which is a mobile home situated on a plot of land. [Doc. 22-2 at ¶¶ 1, 2]; [Doc. 31-2 at ¶¶ 1, 2]. At the time, of the Fire, Plaintiff DAVID T. DOBBS ("Mr. Dobbs") resided in the House, which is titled to his parents, Richard and Pamela Dobbs.[1] [Doc. 22-2 at ¶¶ 4, 5]; [Doc. 31-2 at ¶¶ 4, 5].

---

[1] The nature of Plaintiff's interest in the property, according to his affidavit [Doc. 30], is as follows: In 2004, he and his then-spouse Tricia, obtained the House and land from Plaintiff's parents, and it was titled to Tricia and Plaintiff's father, who executed a Deed to Secure Debt to Atlanta Postal Credit Union ("APCU") to pay for the House and expenses with setting it up for habitation (digging a well, etc.). [Doc. 30-1 at pp. 1–2]. When that marriage dissolved in 2007, Tricia signed her interest in the land to Plaintiff's Father. [*Id*. at p. 1]. In 2009, Plaintiff's Parents lent him the funds to satisfy the APCU loan balance on the House, with the understanding that Plaintiff would repay them, with interest, in payments they outlined in an amortization schedule. [*Id*. at pp. 2, 7–12]. Once the sum was fully repaid, the title of the House and surrounding acreage would be conveyed to Plaintiff. [*Id*.]. Plaintiff is still making payments on this debt to his Parents. [*Id*.]; see also [Doc. 31-2 at ¶ 4–5].

1

David Dobbs obtained an insurance policy ("the Policy") on the House through Defendant ALLSTATE INDEMNITY COMPANY ("Allstate"), and the Policy was in effect at the time of the Fire. [Doc. 20-1]; [Doc. 22-2 at ¶ 3]; [Doc. 31-2 at ¶ 3]. The Policy contains a Concealment Provision[2] and a No-Action Clause.[3] However, as stipulated on the record, his parents cannot recover under the Policy because they were not parties to it, and, therefore, the Court **GRANTS** Defendant's Partial Motion for Summary Judgment on this point and **DISMISSES** Richard Dobbs and Pamela Dobbs from this case. *Hearing before the Hon. Tilman E. Self, III*, M. D. Ga. (11:32–11:37 a.m., February 12, 2020)(discussion of counsel on the record) audio recording on file with clerk Hereinafter, the Court will refer to David Dobbs ("Mr. Dobbs" or "Plaintiff") as the singular Plaintiff.

Plaintiff maintains that the Policy should cover the alleged $164,000 in damages caused by the Fire. [Doc. 1-1 at p. 4]. Allstate argues that Mr. Dobbs cannot recover under the Policy because he does not have an insurable interest in the House and, even if he did have an insurable interest, he cannot recover due to alleged failure to comply with the terms of the Policy. [Doc 22-1 at pp. 7–11]. Plaintiff brought suit against

---

[2] "We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." [Doc. 20-1 at p. 22].

[3] "No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought…unless there has been full compliance with all policy terms…" (original formatting omitted) [Doc. 20-1 at p. 38].

Allstate in the Superior Court of Crawford County, Georgia seeking enforcement of the Policy, and Allstate removed the matter to this Court on August 24, 2018. [Doc. 1].

I. **ALLSTATE'S MOTION FOR PARTIAL[4] SUMMARY JUDGMENT**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

However, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437

---

[4] While Allstate titled its Motion as one for summary judgment, only one of the three raised issues is dispositive of the case, thus the court finds the Motion more appropriately termed one of "partial" summary judgment and refers to the motion as such.

3

(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The moving party "simply may show ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (internal quotation marks and citation omitted). "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Info. Sys. & Networks Corp.*, 281 F.3d at 1224–25 (citing *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. 2548).

The burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp.*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249–50).

"[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255. Stated differently, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "The evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## A. Insurable Interest

In order to enter into an enforceable insurance policy on property, a person must have an insurable interest in the property at the time of loss. *Roach v. Georgia Farm Bureau Mut. Ins. Co.*, 325 S.E.2d 797, 798–99 (Ga. App. 1984). "An 'insurable interest' means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." *Id.* However, "[t]itle is not the sole test for determining an insurable interest." *Am. Reliable Ins. Co. v. Woodward*, 239 S.E.2d 543, 545 (1977) (citing *Gordon v. Gulf American Fire etc., Co.*, 149 S.E.2d 725 (1966)). In this Circuit, "[a]ny interest in property, legal or equitable, *however slight*, is insurable…." *Commercial Union Assur. Co., of London, v. Jass*, 36 F.2d 9, 10 (5th Cir. 1929)[5] (emphasis added); *but see Baumgartner v. State Farm Fire & Cas. Co.*, 244 F. Supp. 3d 1361, 1367 (N.D. Ga. 2017). This Court notes that the *Baumgartner* court found that Baumgartner did not have an insurable interest because, *in addition* to having "no title to the [p]roperty" she *also* was "not financially responsible for maintenance or repairs and ma[de] no *rent* or mortgage payments." *Baumgartner*, 244 F. Supp. 3d 1361. (emphasis added).

Overall,

---

[5] "[T]he decisions of the United States Court of Appeals for the Fifth Circuit…as that court existed on September 30, 1981…shall be binding as precedent in the Eleventh Circuit…" *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

5

> [i]t is sufficient if the insured holds such a relation to the property that its destruction by fire would result in pecuniary loss to him. "The test of insurable interest in property is whether the insured has such a right, title, or interest therein, or relation thereto, that he will be benefited by its preservation and continued existence, or suffer a direct pecuniary loss from its destruction or injury by the peril insured against." A mortgagee or one succeeding to the interest or rights of a mortgagee in the mortgaged property has an insurable interest therein.

*Am. Reliable Ins.*, 239 S.E.2d 543, 545 (citing *Farmers Mutual Fire Insurance Co. v. Pollock*, 184 S.E. 383, 386 (1936); *Pike v. American Alliance Ins. Co.*, 129 S.E. 53 (Ga. 1925); and *Huckaby v. Georgia Farm etc., Ins. Co.*, 231 S.E.2d 378 (Ga. App. 1976)).

In response to Allstate's contention that Mr. Dobbs has no insurable interest, he provided the Court with his affidavit regarding the arrangement with his parents—an understanding upon which he states he has been acting for years. [Doc. 30-1]. He has also provided writings to support this contention, which, while not formal contracts, appear to memorialize Plaintiff's intention that he would gain title to the House upon completion of the payment schedule. [*Id.* at pp. 7–12]. Furthermore, during his examination under oath, Mr. Dobbs maintained his financial arrangement with his parents—repaying debt owed to them, with interest, in payments of $350 per month—would lead to him one day holding title to the House. *See* [Doc. 20-6].

The court finds that in providing these documents, Plaintiff has met his burden of demonstrating that genuine issues of fact still remain regarding his insurable interest in the House, and, therefore, summary judgment is not proper for this issue. To the

extent Allstate wishes to challenge the truth of Mr. Dobbs' affidavit or the authenticity of the writings attached to it, "the judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Therefore, any such dispute should be presented to the trier of fact for consideration at trial. *Id.* Accordingly, Allstate's Motion for Partial Summary Judgment as to the matter of insurable interest in the House is **DENIED**, and that aspect of the matter will proceed to trial.[6]

### B. Conditions Precedent to Enforcement of Insurance Policies

Under Georgia law, "[a]n insurance policy is simply a contract" and "should be construed as any other type of contract." *Yeomans*, 618 S.E.2d at 677–78 (citing *Hunnicutt v. Southern Farm Bureau Life Ins. Co.*, 351 S.E.2d 638 (Ga. 1987). "The general rule is that insureds are chargeable with knowledge of the contents of their policies," and thus "the construction of an unambiguous contract is a question of law for the court." *Tyson v. Scottsdale Indem. Co.*, 805 S.E.2d 138, 141–42 (Ga. Ct. App. 2017); *see also Yeomans*, 618 S.E.2d at 678.

While Courts usually "construe insurance policies to provide coverage, so as to advance the benefits intended to be accomplished by such policies," an insured may forfeit its coverage if it does not satisfy a condition precedent to coverage that is clearly

---

[6] Further, to the extent that Allstate attempts–via its via its supplemental brief–to bring in an allegation of misrepresentation of material fact regarding ownership into the insurable interest portion of its argument, that issue is not before the Court at this time. [Doc. 22]; [Doc. 55]. The only misrepresentation of material fact raised in Allstate's Motion for Summary Judgment (and thus the only misrepresentation presently before the Court) is an alleged misrepresentation of Mr. Dobbs' whereabouts at the time of the fire. [Doc. 22].

7

stated in the contract." *Progressive Mountain Ins. Co. v. Bishop.*, 790 S.E.2d 91, 94 (Ga. Ct. App. 2016) (citing *Plantation Pipe Line Co. v. Stonewall Ins. Co.*, 780 S.E.2d 501 (Ga. Ct. App. 2015)). A general provision denying coverage unless the insured has fully adhered to the policy is sufficient to create a condition precedent. *Progressive*, 790 S.E.2d at 94. In order to receive coverage under a policy in which a condition precedent of compliance has been established, an insured must show that it complied with the policy or demonstrate proper justification for failing to do so. *Id.* at 94–95.

Regarding the matter of Mr. Dobbs' alleged misrepresentation of a material fact, the Court finds that the Policy clearly and unambiguously states that Allstate will not cover a loss if the insured "has concealed or misrepresented any material fact or circumstance." [Doc. 20-1 at p. 22]. However, while noncompliance due to material misrepresentation would preclude coverage under the terms of the contract, the evidence on record consists of conflicting statements under oath from Plaintiff and his expert witness, Ricky Turner. *See* [Doc. 20-6]; [Doc. 24]; [Doc. 30].

Mr. Dobbs stated under oath to Allstate that he was out driving in his truck at the time of the fire; however, Mr. Turner recalled that during his interview with Mr. Dobbs, he understood that Mr. Dobbs was out riding his ATV at the time of the fire. [*Id.*]. While Allstate pits this as a dispositive discrepancy, indicating clearly that Mr. Dobbs misrepresented his whereabouts to Allstate as it was conducting its investigation, the Court disagrees. Undoubtedly, a question of genuine fact remains as

8

to whether Plaintiff misrepresented any material fact (or whether Mr. Turner misremembered or Mr. Dobbs misspoke to either Mr. Turner or Allstate).

The weighing of the respective testimonies "to determine the truth of the matter" is the function of the trier of fact. *Anderson*, 477 U.S. at 249. Thus, Allstate's Motion for Partial Summary Judgment as to Plaintiff's misrepresentation of material fact is likewise **DENIED**.

II.     **ALLSTATE'S MOTION TO EXCLUDE OPINION TESTIMONY**

Allstate has filed a motion to exclude any opinion testimony from Plaintiffs' purported expert, Mr. Ricky Turner, with regard to the cause of the Fire. [Doc. 21]. Mr. Turner's *curriculum vitae*, signed report compiled pursuant to Federal Rule of Civil Procedure 26(2)(B), and his deposition are all on record into the case. [Doc. 24]; [Doc 42]; [Doc. 42-1]. [7] The ultimate opinion Mr. Turner purports to present at trial, considering "the whole scenario," is that there is not conclusive evidence that the fire was intentionally set; in fact, he opines to the contrary that the fire was accidental. *Hearing*

---

[7] Mr. Turner was employed with the Georgia Fire Marshal's Office from 1985 until 1995. [Doc. 42-1 at p. 2]. He then worked as a special investigator with Georgia Farm Bureau. [*Id*.]. Mr. Turner first became a certified fire investigator through the State of Georgia in 1993, certification PS-07-93-A001-N. Turner Depo. 38:19–22; 42:5–6. He also obtained his certification as a fire and explosion investigator through the National Association of Fire Inspectors, CFEI certification number 10174-4639. Turner Depo. 41:1–24. Through his work with the Georgia Fire Marshal's Office, Mr. Turner was certified as a vehicle fire investigator and propane gas investigator. Turner Depo. 43:13–18. Currently, Mr. Turner is not a full-time fire investigator and takes as few as one case per year, therefore, at this time, he does not regularly attend training and seminars on fire investigation. *Hearing before the Hon. Tilman E. Self, III*, M. D. Ga. (11:11–11:12 a.m., February 12, 2020)(testimony of Ricky Turner) audio recording on file with clerk; Turner Depo. 30:6–15. His most recent training was in 2018 and consisted of eight hours of theft and fire investigation, completed through an online service. Turner Depo. 30:6–15. The most recent in-person training Mr. Turner attended was the Southeastern Arson Seminar in 2013. Turner Depo. 33:9–10.

9

*before the Hon. Tilman E. Self, III,* M. D. Ga. (11:03–11:12 a.m., February 12, 2020) (testimony of Ricky Turner) audio recording on file with court.

Mr. Turner summarized at the hearing that his opinion is based on his observation that there was little glass left at the scene; that the proposed theory that a cat walking on the countertop and knocking the lamp over was plausible; and that the vast majority of Mr. Dobbs' possessions were still in the home. *Id.* Furthermore, Mr. Turner's signed report states that he relied upon "lab reports, an inspection of the premises, and [his] interview of Mr. Dobbs" and that his "findings contained in [his] report are based upon that information and [his] specialized training, knowledge and experience and are made to a reasonable degree of scientific certainty." [Doc. 42 at pp. 1, 3–5]. Mr. Turner's physical testing included independent "ignitable liquid residue" testing of samples originally collected by Allstate's investigator and inspection of the two lamps removed from the scene (one broken and one intact). [*Id.* at pp. 2, 4–5]; [Doc. 42-3].

A. **Standard of Review for Expert Testimony**

When a party puts forth a witness set to testify as an expert under Federal Rule of Evidence 702, "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999)(citing *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. at 592 n. 10 (1993)); The

role of the trial court is to serve as "gatekeeper" by conducting "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1244-45 (11th Cir. 2018) (citing *Daubert*, 509 U.S. 593-94).

This gatekeeper role is not "intended to supplant the adversary system or the role of the jury" because "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the appropriate means of attacking contrary evidence. *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir.1999) (quoting Daubert, 509 U.S. 579, 596). Overall, "[t]he importance of *Daubert's* gatekeeping requirement cannot be overstated" as "no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case, and based upon otherwise inadmissible hearsay." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Thus, trial courts "engage in a rigorous three-part inquiry" to determine whether expert testimony is admissible by examining whether

> (1) the expert is qualified[8] to testify competently regarding the matters he intends to address;
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort

---

[8] An expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

> of inquiry mandated in *Daubert*;[9] and
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998)).

More specifically, "[e]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d 1244, 1262–63 (11th Cir. 2004). *See also United States v. Rouco*, 765 F.2d 983, 995 (11th Cir.1985) (expert testimony admissible if it offers something "beyond the understanding and experience of the average citizen"). Expert opinion of causation should be excluded where it "is nothing more than a conduit for the story of the [party proffering the expert]. *Nixon v. Zurich Am. Ins. Co.*, No. 7:15-CV-34 (HL), 2016 WL 1572949, at *4 (M.D. Ga. Apr. 19, 2016) (limiting testimony as to causation where a State Trooper's conclusion on causation was based

---

[9] The *Daubert* analysis for reliability is meant to be a flexible standard, and the Court has "considerable leeway" when deciding how to determine reliability. *Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1245 (11th Cir. 2018). Thus, whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine. *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167, 1176, (1999)(holding that it was not an abuse of discretion to exclude testimony when the trial court "initially doubted, and then found unreliable, 'the methodology employed by the expert in analyzing the data obtained in the visual inspection, and the scientific basis, if any, for such an analysis' … [and] determined that [the] testimony was not reliable. It fell outside the range where experts might reasonably differ, and where the jury must decide among the conflicting views of different experts, even though the evidence is 'shaky.'"

*solely* on his understanding of the facts as accounted by only one party). Thus, as the Middle District of Georgia has previously found, "to the extent that [an expert] simply repeats what was told to him by [a third party] to arrive at his theory regarding how the [in]cident transpired, his testimony should be excluded as hearsay." *Id.*

However, such a witness could still, by virtue of "extensive experience"[10] be "qualified to testify about what he observed at the scene" including the position of affected objects, the condition of affected objects, the debris distributed at the scene, and markings of investigators. *Id.* That person would

> also [be] competent to testify about his observations and interactions with various individuals he encountered during his investigation that influenced his opinion regarding how the accident occurred. To the degree that [the opposing party] believes that [the expert's] investigation may be in some way flawed or incomplete, any inconsistencies more accurately impact the weight of the evidence offered by [the expert] and not the admissibility, and [the opposing party] may thoroughly explore any perceived gaps in [the expert's] testimony on cross-examination."

*Id.* The *Nixon* court further found that even an expert who becomes involved "several years" after an incident can formulate an opinion if he applies scientific theories and reasoning to measurements of the scene; photographs of the scene immediately following the incident; the damage and debris; reports; and sworn statements. *Id.* at *3

---

[10] There, the purported witness was "a State Trooper for more than 20 years and who ha[d] extensive experience working in accident reconstruction" testifying on the state of a vehicle accident to which he responded. *Nixon*, 2016 WL 1572949, at *4 (M.D. Ga. Apr. 19, 2016).

**B.     Discussion**

After careful consideration and applying the standard set forth by Federal Rule of Evidence 702, the Court finds that Mr. Turner is qualified as an expert through the combination of his "knowledge, skill, experience, [and] training" as reflected in his C.V. and testimony. The Court further finds that Mr. Turner's methodology in reaching his opinion, including review of documentary and photographic evidence; independent testing of samples collected from the scene; and visit to the scene (albeit years later, as was the case in *Nixon*) are all reliable methods for gathering knowledge upon which to base an opinion.[11]  In addition, the Court finds that Mr. Turner's specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue (by explaining the results of the independent lab testing performed, explaining photographs, providing description of the scene with details a layperson may not notice, etc.).

Therefore, the Court **DENIES IN PART** Allstate's Motion to Exclude Mr. Turner's opinions and will permit opinion testimony as to his conclusions developed from his investigation and evaluation of the physical and documentary evidence. However, the

---

[11] While Allstate has spent a great deal of time both in its briefs and at the motion hearing noting that Mr. Turner did not utilize the specific NFPA guidelines for fire investigation, the Court notes that "[T]here is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field." *Nixon v. Zurich Am. Ins. Co.*, No. 7:15-CV-34 (HL), 2016 WL 1572949, at *5 (M.D. Ga. Apr. 19, 2016). Thus, his failure to use a methodology, which Allstate terms "the Bible" of fire investigation, does not automatically disqualify Mr. Turner's methodology to the extent that his testimony should be limited. The effect—if any—of his failure to use the NFPA has on his opinion speaks to the weight of his testimony and not its admissibility.

Court, in keeping with the reasoning of *Nixon,* also **GRANTS IN PART** Allstate's Motion and to the extent that Mr. Turner "simply repeats what was told to him" by Plaintiff to reach any conclusion, his testimony should be excluded as hearsay.[12]

### III.  CONCLUSION

In summary, for the reasons discussed above, the Court **GRANTS IN PART** Allstate's Motion for Partial Summary Judgment and **DISMISSES** Plaintiffs Richard Dobbs and Pamela Dobbs from this case; the Court **DENIES IN PART** Allstate's Motion for Partial Summary Judgment as to the matters of Mr. Dobbs' insurable interest in the House and whether Mr. Dobbs misrepresented any material fact to Allstate, and those two issues shall proceed to trial; and the Court **GRANTS IN PART** and **DENIES IN PART** Allstate's motion to limit opinion testimony, as more specifically described in Section II, B, *supra,* and will permit Mr. Turner to give his opinions reached through investigation to the extent they are not mere repetitions of hearsay.

So ORDERED this 26th day of February, 2020.

s/Tilman E. Self, III<br>
**TILMAN E. SELF, III, JUDGE**<br>
**UNITED STATES DISTRICT COURT**

---

[12] For example, in *Nixon*, the State Trooper was not permitted to relay his conclusion that one party crossed the center line, because he based that opinion solely on the story told to him by the other party with no other evidence to support or discredit the account. Thus, while Mr. Turner could rely upon information provided by Mr. Dobbs to gather information for his opinion, he cannot merely adopt Mr. Dobbs' opinions as his own expert opinion without providing further support for his ultimate expert opinion.