# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

|  |  |
|---|---|
| **DAVID T. DOBBS,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:18-cv-00309-TES** |
| **ALLSTATE INDEMNITY COMPANY,** | |
| *Defendant.* | |

## THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER DENYING PLAINTIFF'S MOTION TO VOLUNTARILY DISMISS

This case involves a typical insurance-coverage dispute following a mobile home fire in Fort Valley, Georgia. After the fire, Plaintiff David T. Dobbs turned to his insurance company, Defendant Allstate Indemnity Company, and made a claim on his homeowner's policy. After all, his policy was in effect at the time of the fire, and Allstate, until it cancelled the policy, accepted his premiums for a year following the fire. [Doc. 81, Transcript of Proceeding, pp. 281:21—282:4]. Allstate, however, denied Plaintiff's claim for a myriad of reasons. First, Allstate contends that Plaintiff lied about his whereabouts at the time of the fire, which led Allstate to believe that the "fire was intentionally set" in order to collect the insurance money. [Doc. 90-4, pp. 1–2]. Second, Allstate says that Plaintiff lied to it about a "mortgage" on the mobile home when he

filled out the Proof of Loss form after the fire. *See* [Doc. 91-1, p. 1]. With the battle lines clearly drawn, Plaintiff filed suit.

Originally filed in the Superior Court of Crawford County, Georgia, Plaintiff sued for breach of contract, "tortious breach of contract," and a claim for bad faith with respect to the insurance policy. [Doc. 1-1, ¶¶ 17–19]. Earlier in the litigation, Allstate moved for partial summary judgment on several issues. In the Court's ruling, it decided there were issues of fact as to whether Plaintiff had an insurable interest in the mobile home and whether he made material misrepresentations to Allstate when making his claim. [Doc. 57, pp. 5–9]; *see, e.g.*, [Doc. 91-1]. And, with Allstate continuing to accuse Plaintiff of arson, the case proceeded to trial.

After the parties agreed to a bench trial, the Court heard testimony on April 15, 2021, and August 30, 2021.[1] [Doc. 70]; [Doc. 71]; [Doc. 81, Transcript of Proceeding, p. 6:17–21]. As witness examination progressed on April 15, the Court suggested, and the parties agreed, that first answering the question of whether Plaintiff had an insurable interest in the mobile home seemed to be the most efficient way to proceed. Put simply, if Plaintiff didn't have an insurable interest, it was game over. So, the Court heard Plaintiff's testimony regarding what he alleged to be his insurable interest in the mobile

---

[1] Complete transcripts of the proceedings held on April 15, 2021, and August 30, 2021, may be found on the Court's Case Management and Electronic Case Filing system. *See generally* [Doc. 81]; [Doc. 88].

home and whether he had committed a material misrepresentation so that Allstate could void his policy *ab initio*.

After Plaintiff presented his evidence, the Court paused the proceedings and allowed Allstate to file a formal Motion for Directed Verdict [Doc. 74], which it did pursuant to Federal Rule of Civil Procedure 50. [Doc. 74, p. 1]. Plaintiff, of course, filed a Response [Doc. 75]. However, it wasn't until after the parties had fully briefed their arguments that the Court (and apparently the parties' counsel) learned that a party can't make a Rule 50-based motion for directed verdict in a bench trial.

Rule 50 "applies only in cases tried to a jury with the power to return a binding verdict." *Schlitt v. State of Fla.*, 749 F.2d 1482, 1482–83 (11th Cir. 1985). "In cases using no jury or an advisory jury," Rule 41(b) and Rule 52(a) "clearly mandate that the trial judge issue findings of fact and conclusions of law" if a plaintiff's case is to be dismissed. *Id.* at 1483. Unlike Rule 50—which mandates that district judges draw all reasonable inferences in favor of the nonmovant—Rule 52 specifically allows district judges the ability to weigh the evidence, resolve any conflicts in it, and decide for themselves in which party's favor the preponderance of the evidence lies. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 130, 150–51 (2000); 9C Wright & Miller Federal Practice and Procedure Civil 3d § 2573.1, pp. 259–62. "A judgment on partial findings under Rule 52(c) is made after the court has heard all the evidence bearing on the issue of fact[]"— the predominating issues of fact in this case being whether Plaintiff has an insurable

3

interest and whether he adequately proved damages at trial. *Id.* at § 2573.1, p. 266. With these two issues of fact presented to the Court upon closure of Plaintiff's case-in-chief, the issue of whether Plaintiff made material misrepresentations to Allstate falls to the backburner. If the insurable interest and damages issues are resolved in Allstate's favor, then there is no need to hear any evidence or make any determination about Plaintiff's alleged material misrepresentations.

Cautious as to whether Plaintiff had been "fully heard . . . with respect to" the issues of fact the Court needed to resolve; the Court recommenced trial on August 30 to ensure that Plaintiff had a full, fair, and complete opportunity to present his case-in-chief. *Id.* at § 2574, pp. 272–73. After Plaintiff fully presented his case-in-chief and rested, Allstate made an oral motion similar to the one it made on April 15, 2021, and briefed on May 18, 2021, and June 18, 2021. [Doc. 74]; [Doc. 76]. This time, however, Allstate moved under Rule 52, which mandates the Court to "find the facts specially and state separately its conclusions of law." 9C Wright & Miller Federal Practice and Procedure Civil 3d § 2574, p. 268. So, in accordance with the Court's obligations under Rule 52(a), it now issues its Findings of Fact and Conclusions of Law[2] and, considering the evidence on the factual issues before it, Judgment on Partial Findings is due to be entered in Allstate's favor. *See* Fed. R. Civ. P. 52(a).

---

[2] To the extent that any findings of fact are deemed conclusions of law, they are incorporated herein as conclusions of law. Conversely, to the extent that any conclusions of law are deemed findings of fact, they are incorporated herein as findings of fact.

## PLAINTIFF'S CLAIMS

Plaintiff's Complaint asserts that Allstate "is indebted" to him for the damages to the mobile home in the amount of at least $155,000—representing, *inter alia*, $85,000 for the loss of the structure and $57,000 for the loss of his personal property. [Doc. 1, p. 4, ¶ 13]. By way of a roadmap, the Court first addresses Plaintiff's insurable interest before turning its attention to his failure to prove damages as they pertain to both his personal property contents within the mobile home and the structure itself. *See* [Doc. 88, Transcript of Proceeding, p. 140:13–18 (discussing that damages in cases like this one are broken into "contents and structure" categories)]. Addressing those issues disposes of Allstate's Rule 52(c) motion and removes any need for the Court to determine whether Plaintiff made material misrepresentations to Allstate.

## PLAINTIFF'S INSURABLE INTEREST

### A.   Findings of Fact

Via his Complaint, Plaintiff claims that Allstate owes him the limits of the insurance policy he purchased to cover the mobile home and its contents. [Doc. 1, pp. 3–4, ¶¶ 8, 13]; *see, e.g.*, [Doc. 86-3, p. 4]. This mobile home, located at 4846 Union Church Road, is situated on an approximately 11-acre property, known as "Parcel N-6," in Fort Valley, Crawford County, Georgia. [Doc. 90-1, p. 4]; [Doc. 87-14, p. 1]. In 1994, Plaintiff's parents, Richard and Pamela Dobbs, surveyed Parcel N-6 and designated a two-acre portion within it as "Parcel N-6A." [Doc. 74-2, p. 1]; [Doc. 87-14, p. 1].

Fast forward to May 2004, Plaintiff and his first wife told his parents that they wished to start the process of moving to Union Church Road. [Doc. 87-8, p. 1]. With survey costs and the payment terms ironed out in a handwritten agreement between father, mother, son, and daughter-in law, Plaintiff's parents had a survey prepared for a second subdivision of Parcel N-6. [*Id.*]; *see also* [Doc. 74-1, pp. 3–5]; [Doc. 87-14, p. 1]. Once completed, in addition to the already-existing Parcel N-6A, Parcel N-6 contained a total of five parcels: Parcels N-6A through N-6E. [Doc. 87-8, p. 1]; [Doc. 87-14, p. 1].

Through the gracious help of his parents, not unlike many families, Plaintiff moved into a mobile home on Parcel N-6C. [Doc. 88, Transcript of Proceeding, p. 56:16–17]. During the first day of trial, however, it became quite apparent that Plaintiff did not have legal title to the mobile home situated on Parcel N-6C. [*Id.*]; [Doc. 81, Transcript of Proceeding, p. 263:16–18]. Naturally, this sparked the Court's insurable interest inquiry.

Before Richard Dobbs[3] passed away on November 24, 2019, he, his wife, and Plaintiff all agreed that title to the mobile home would remain in their name until Plaintiff repaid them for the amount of a lien Richard had previously satisfied. [Doc. 81, Transcript of Proceeding, pp. 166:19–23, 177:20—178:2; 245:19—246:10 (discussing refinancing of certain Parcel N6 portions)]. According to Plaintiff's testimony, "[t]here

---

[3] Richard and Pamela Dobbs were originally named as plaintiffs in this case. *See, e.g.,* [Doc. 1-1, p. 2]. However, because Richard Dobbs and Pamela Dobbs were not parties to the insurance policy and thus, did not have a contract with Allstate, the Court terminated them as named plaintiffs. [Doc. 57, pp. 1–2]; [Doc. 81, Transcript of Proceeding, pp. 232:20—233:5].

was no legal lien on file anywhere. It had been paid off through the bank." [*Id.* at p. 246:14–15]. So, while there wasn't a "mortgage" on the property, Plaintiff's parents—not him—held legal title to it because he was still making payments to them at the time of the fire. [*Id.* at p. 178:18–25]. In fact, Pamela Dobbs testified that Plaintiff "has paid his payments continually to date" and hasn't "miss[ed] a payment." [*Id.* at pp. 168:19–20, 169:3–4]. This brings the Court to its first issue for consideration: whether Plaintiff has an insurable interest in the mobile home.

**B.**     **Conclusions of Law**

Georgia law requires Plaintiff—as the insurance claimant—to have an insurable interest in the mobile home to recover for his claimed loss. *Baumgartner v. State Farm and Casualty Co.*, 244 F. Supp. 3d 1361, 1365 (N.D. Ga. 2017) (citing O.C.G.A. § 33-24-4(b)) ("No insurance contract on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having, at the time of the loss, an insurable interest in the things insured."). An insurable interest is "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." O.C.G.A. § 33-24-4(a). Courts determine such interests by considering whether the "insured has such a right, title, or interest therein, or relation thereto, that he will be benefitted by its preservation and continued existence, or suffer a direct pecuniary loss from its destruction or injury by the peril insured against." *Baumgartner*, 244 F. Supp. 3d at 1356–

66 (quoting *Splish Splash Waterslides, Inc. v. Cherokee Ins. Co.*, 307 S.E.2d 107, 109 (Ga. Ct. App. 1983)). Simply put, mere possession of property doesn't create an insurable interest. *Baumgartner*, 244 F. Supp. 3d at 1336 (citing *Muhammad v. Allstate Ins. Co.*, 722 S.E.2d 136, 139 (Ga. Ct. App. 2012)). Rather, <u>any</u> "*lawful* interest in property" creates an insurable interest. *Baumgartner*, 244 F. Supp. 3d at 1336 (quoting *Conex Freight Sys., Inc. v. Ga. Ins. Insolvency Pool*, 561 S.E.2d 221, 225 (Ga. Ct. App. 2002)).

Long before the Fifth Circuit Split,[4] the law in this circuit provided that "[a]ny interest in property, legal or equitable, however slight, is insurable . . . ." *Com. Union Assurance Co. of London v. Jass*, 36 F.2d 9, 10 (5th Cir. 1929); [Doc. 88, Transcript of Proceeding, p. 135:1–4 (Allstate's agreement that "any interest . . . however slight" can determine insurable interest)]. This undisturbed and binding precedent makes the Court's inquiry on Plaintiff's insurable interest rather straightforward. Here, the evidence clearly shows that Plaintiff didn't have title to the mobile home, but that fact— in light of *Commercial Union*—doesn't necessarily stop him from recovering for a claimed loss. 36 F.2d at 10. Since Plaintiff has "paid his payments continually to date[,]" it's clear that he had (and still has) some equitable interest in the property. [Doc. 81, Transcript of Proceeding, p. 168:19–20].

---

[4] "[T]he decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for [the court of appeals], the district courts, and the bankruptcy courts . . . ." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

For example, had Plaintiff's parents (as the legal title holders to the mobile home) sold the mobile home to a third party, Plaintiff would likely—based on their agreement—be entitled to some portion of the sales proceeds. What's more, the Court finds Pamela Dobbs' testimony that Plaintiff had made several payments and was consistently making his payments to be credible. [*Id.* at p. 169:1–4]. So, logic dictates that but for the fire, eventually there would have come a time when Plaintiff fulfilled his payment obligations, title to the mobile home would have been placed in his name, and he would have been the one who directly suffered "pecuniary loss from [the mobile home's] destruction." *Baumgartner*, 244 F. Supp. 3d at 1356–66. Thus, Plaintiff undoubtedly has an insurable interest in the mobile home, but the extent of that interest[5] and the amount of damages to his personal property is unknown.

### PLAINTIFF'S FAILURE TO PROVE DAMAGES PERTAINING TO THE CONTENTS OF THE MOBILE HOME

### A.     Findings of Fact

As to the contents of the mobile home, the policy provides the following provision for recovering items involved in a loss.

> b) Actual Cash Value. If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the

---

[5] Certainly (maybe, perhaps, through bank statements showing Plaintiff's payments) it would have been helpful for Plaintiff to have clearly articulated exactly what he contended his interest in the subject property to be. However, the exact extent of his ownership interest doesn't really matter because, as the Court explains later, he couldn't make a prima facie case under Georgia's Valued Policy statute.

coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

You may make a claim for additional payment as described in . . . paragraph d) below if applicable, if you repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

. . .

d) Personal Property Reimbursement. When the Policy Declarations shows that the Personal Property Reimbursement provision applies under Coverage C–Personal Property Protection, we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

[Doc. 90-1, pp. 35–36]. In other words, if an insured doesn't prove that he replaced personal property, he can only recover the actual cash value for the items lost. The only way the insured, under the terms of this policy, can receive more than the actual cash value of items lost, without proof of replacement, is if the Personal Property Reimbursement provision applies to the insured and he, as relevant here, "replace[d]" the "damaged" or "destroyed" personal property within 180 days of an actual cash value payment. [*Id.* at p. 36].

After the fire, Plaintiff compiled and submitted a list of damaged items from within the mobile home to Allstate. [Doc. 88, Transcript of Proceeding, p. 131:9–20]. Following Allstate's instructions, Plaintiff included his everyday kitchen items, bedroom and living room furniture, clothes—all the things one would think makes up a home. *See generally* [Doc. 90-2]; [Doc. 88, Transcript of Proceeding, p. 132:3–8]. Plaintiff

testified that he has replaced "[a]lmost everything" on that submitted list. [Doc. 88, Transcript of Proceeding, p. 130:1–3]. However, Plaintiff never produced proof of replacement to Allstate in the form of "any receipts, invoices, et cetera showing that [he] replaced anything."[6] [*Id.* at pp. 130:4—131:4]. Thus, per the terms of the policy, Plaintiff would only be able to recover the actual cash value for his lost items, unless after payment of the actual cash value amounts from Allstate, he acted pursuant to the Personal Property Reimbursement provision. *See* [Doc. 90-1, p. 5 (listing "Personal Property Protection – Reimbursement Provision" in the "[c]overage detail for the property insured")]. However, the contents of Plaintiff's list—and, frankly, Allstate's arson defense (on which the Court never heard any evidence because of Allstate's Rule 52(c) motion)—are why Allstate never paid Plaintiff an actual cash value payment for his lost items in the first place.

## B.    <u>Conclusions of Law</u>

When it comes to Plaintiff's personal property contents within the mobile home, he "has the burden of furnishing evidence sufficient to enable the [finder of fact] to calculate the amount of damages with reasonable certainty without speculation." *Champion v. Dodson*, 587 S.E.2d 402, 404 (Ga. Ct. App. 2003). To "[m]erely list[] the damaged items, along with a monetary figure estimating replacement cost based

---

[6] Plaintiff's counsel candidly admitted Plaintiff has no receipts of anything he replaced. [Doc. 88, Transcript of Proceeding, pp. 149:14—150:25].

entirely upon [an] original purchase price" is insufficient to establish damages. *Id.* at 405. In other words, "[e]vidence of the retail purchase price of property alone is not sufficient to establish the fair market value of the property at the time of the loss[.]" *Id.* at 405. It is "the age and condition of the property, the fair market value at the time of loss, the condition immediately after the loss, and the fair market value immediately after the loss [that] must be proven to establish the damages." *Id.* at 404.

As Allstate argued at trial, "[t]he problem" with Plaintiff's list is that it "doesn't do all of [the] things that you need to do to prove [actual cash value]." [Doc. 88, Transcript of Proceeding, p. 142:18–20]. For example, Plaintiff lists a six-year-old, 30-piece set of silverware. [*Id.* at p. 142:21–22]; [Doc. 90-2, p. 1]. But, as Allstate iterated, Plaintiff's simplified information doesn't allow the Court (or Allstate) to "arrive at an actual cash value or a depreciated value" for the silverware set. [Doc. 88, Transcript of Proceeding, p. 142:22–24]. Sure, Plaintiff listed the age and purchase price of the silverware set, but he failed to include any description of its condition at the time of the fire or any evidence that would allow for a determination of its actual cash value.[7]

---

[7] Allstate "gave [Plaintiff] a stack" of papers on which to list his damaged items, and he did just as Allstate directed. [Doc. 88, Transcript of Proceeding, p. 132:3]. Based on that, Plaintiff reasonably argues that Allstate shouldn't complain about the manner in which he listed his replacement costs when Allstate provided the form for him to complete. While some would understandably argue that this is patently unfair, the fact remains that Plaintiff (even though he used Allstate's form) did not establish the *actual cash value* of the items he sought to recover as required by the insurance policy. Had Plaintiff offered receipts for the contents that he had replaced, he likely could have proven *some* damages relating to the contents of the mobile home.

The list, overall, is wholly inadequate to prove actual cash value under Georgia law. Several items listed are missing the age, and on some of the items where Plaintiff listed the age, he omitted the original purchase price and failed to describe the item's condition. Of course, Plaintiff never testified or told Allstate that everything on his list was new, but he only described condition twice. *See, e.g.*, [Doc. 90-2, pp. 14, 16 (describing "Fog Lights" as "New in Box," and "New Metal Rack in Box")]; *see also* [Doc. 88, Transcript of Proceeding, pp. 149:14—150:12]. Plaintiff's list simply doesn't aid the Court in arriving at the depreciated, actual cash value of his damaged items; he only told the Court what it would cost to *replace* the items immediately after the fire. To arrive at some dollar amount for Plaintiff's damaged items could only be achieved by adding together speculated totals and would undeniably be the result of complete guesswork.[8] *Crawford v. Dammann*, 626 S.E.2d 632, 640 (Ga. Ct. App. 2006). Thus, Plaintiff did not prove any damages related to the contents of the mobile home with "reasonable certainty." *Id.*

---

[8] To show just how much speculation would be involved using Plaintiff's list, if the Court accepted it as submitted, the Court would have awarded Plaintiff $100.00 as replacement costs for Ziploc bags, tinfoil, and Saran wrap lost during the fire. [Doc. 90-2, p. 4].

## PLAINTIFF'S FAILURE TO PROVE DAMAGES PERTAINING TO THE STRUCTURE OF THE MOBILE HOME

### A.    Findings of Fact

Plaintiff alleges that "the mobile home in question suffered extensive fire damage and was essentially destroyed[.]" [Doc. 1-1, p. 3, ¶ 7]. His Complaint sets forth the usual claims in a typical insurance-coverage dispute, chief among them, regarding the structure, are damages to the mobile home and costs associated with its removal. [*Id.* at p. 4, ¶ 13]. As testimony during trial unfolded, questions phrased to Plaintiff and to one of his witnesses on direct examination took the form of whether the mobile home was a "total loss," shedding the "essentially destroyed" label. *See, e.g.*, [Doc. 81, Transcript of Proceeding, pp. 38:14–17, 41:5–9]; [Doc. 88, Transcript of Proceeding, p. 7:4–5].

On the first day of trial, Ricky Turner, Plaintiff's fire investigator, testified that "based on what [he] observed about it, . . . the [mobile home] was a total loss[.]" [Doc. 81, Transcript of Proceeding, pp. 28:25—29:2, 38:14–17, 71:13–15]. This opinion testimony, however, had "[n]ever been revealed" to Allstate until Mr. Turner gave it at trial. [*Id.* at p. 38:20–22]. Essentially, Mr. Turner's testimony about the state of the mobile home was "an opinion that ha[d] never been revealed on a Rule 26 report at all." [*Id.*]. Obviously, recanting to the Court how he remembered seeing the mobile home during his investigation approximately two years after the fire, Mr. Turner testified that even though "there was smoke . . . around the eaves of the house" and "a lot of heat and

smoke damage everywhere[,]" it "was basically still intact." [*Id.* at pp. 30:10–16; 32:18—33:3; 60:2; 121:15–16].

Plaintiff's testimony was similar, a description of how he remembered the mobile home after the fire. Specifically, Plaintiff testified that it was "visible" to him that there was "heat and smoke damage throughout most of the [mobile home]." [Doc. 88, Transcript of Proceeding, pp. 60:10–13; 61:11–14]. And although Plaintiff testified that he made a list of what he anticipated it would cost him to repair the mobile home, that was as far as his testimony could go—notwithstanding his claim that he had over 30 years of construction and remodeling experience and had worked as a general contractor. [*Id.* at pp. 63:22—64:17]. Allstate, in fact, disputed that testimony during trial and argued that "[t]here has never been a peep[]" about Plaintiff having a contracting career. [*Id.* at pp. 70:5–12]. Even making the extraordinary, truly extraordinary, leap that Plaintiff's experience of driving a "truck pulling a trailer" encircled some sort of "contracting career[,]" the Court, for one simple fact, couldn't permit Plaintiff to testify further. [*Id.*]. He hadn't given Allstate notice that he intended to act as his own expert witness.

Plaintiff unequivocally admitted that he didn't file the required expert disclosure report that would allow him to be tendered as an expert witness *in anything*—be it in construction and remodeling or in knowing how to physically move a mobile home to show the costs of removal. [*Id.* at pp. 62:16–63:4 (discussing expert disclosure reports,

15

"Didn't do it."); 66:12 — 67:23 (discussing moving a mobile home); 72:23–25 ("We've probably never gone through the Rule 26 stuff adequately to identify him as an expert. I concede that.")]. Without making that disclosure, the Court refused to allow Plaintiff to offer any evidence in the form of an opinion as to the amount of loss (for the structure, obviously) of the mobile home and costs for removal.

The fact remains that Plaintiff never told Allstate before trial that he was going to try and use himself or Mr. Turner to provide expert opinion testimony about the value of loss. [Doc. 81, Transcript of Proceeding, pp. 40:19 — 41:18]. Despite Mr. Turner's experience and Plaintiff's supposed experience in the construction industry, Plaintiff still had an obligation to comply with the mandatory expert disclosure requirements and inform Allstate that he and Mr. Turner intended to give expert testimony as a means to prove the extent of Plaintiff's loss under Georgia's Valued Policy statute. [*Id.* at p. 39:11–21].

**B.**    **Conclusions of Law**

**1.**    **Georgia's Valued Policy Statute**

Had Plaintiff proved that the mobile home was "wholly destroyed by fire," as he and Mr. Turner claimed in their testimony, he would be entitled to the full limits of the insurance policy — approximately the recovery amount sought in the Complaint. O.C.G.A. § 33-32-5(a); *see* [Doc. 1, p. 4, ¶ 13] *in connection with* [Doc. 90-1, p. 5]. Georgia's Valued Policy statute provides in relevant part:

> Whenever any policy of insurance is issued to a natural person or persons or to any legal entity wholly owned by a natural person or persons insuring a specifically described one or two family residential building or structure located in this state against loss by fire and the building or structure is *wholly destroyed by fire* without fraudulent or criminal fault on the part of the insured or one acting in his or her behalf, *the amount of insurance set forth in the policy relative to the building or structure shall be taken conclusively to be the value of the property* . . . .

O.C.G.A. § 33-32-5(a) (emphasis added). The statute is designed "to protect property owners from the burden of proving the value of property after it has been 'wholly destroyed' by fire, thus entitling a property owner to recover the policy limit." *Hollingsworth v. LM Ins. Corp.*, No. 5:17-cv-00494-TES, 2019 WL 1103414, at *5 (M.D. Ga. Mar. 8, 2019), *aff'd*, 808 F. App'x 942 (11th Cir. 2020); *Marchman v. Grange Mut. Ins. Co.*, 500 S.E.2d 659, 661 (Ga. Ct. App. 1998) ("[The statute] protects property owners from the overwhelming burden of proving the value of property after it has been totally destroyed by fire by 'conclusively' establishing that the value of the property equals the face value of the policy. In this way, a property owner is entitled to the benefits of the insurance coverage without the difficult and perhaps impossible task of proving actual damages."). However, the statute will not apply to an insurance claim unless the "building or structure is . . . wholly destroyed by fire[.]" *Hollingsworth*, 2019 WL 1103414, at *5 (quoting O.C.G.A. § 33-32-5(b)(1)).

In this case, Plaintiff never introduced any admissible evidence in order to show that Georgia's Valued Policy statute applies to his claim. Notably, this is not the first time the Court has dealt with this exact evidentiary issue. In *Hollingsworth v. LM*

*Insurance Corporation*, the Court discussed the fact that Georgia law does not define "wholly destroyed." 2019 WL 1103414, at \*5. Instead, the Georgia Court of Appeals has provided guidance on how to make a "wholly destroyed" determination through the development of its common law. *See id.* at \*5–6.

First, in *Allstate Insurance Company v. Baugh*, 327 S.E.2d 576, 579 (Ga. Ct. App. 1985), the insurer contended that the trial court erred in charging the jury on Georgia's Valued Policy statute and its effects on recovery, arguing that such a charge was unauthorized by the evidence. In *Baugh*, the policyholders had their home and its contents destroyed by fire. 327 S.E.2d at 577. The insurance company argued that the evidence at trial established that the home was not wholly destroyed. *Id.* at 579. However, "[t]here being at least *some evidence of record* that [the homeowners'] home was totally destroyed," the Georgia Court of Appeals held that "the trial court's charge based on [Georgia's Valued Policy statute] was proper." *Id.* (emphasis added).

Second, in *Georgia Farm Bureau Mutual Insurance Company v. Brown*, the Georgia Court of Appeals reviewed a trial court's denial of an insurer's motion for judgment notwithstanding a jury's verdict allowing a plaintiff to recover the policy limits when a fire "destroyed" his home. 385 S.E.2d 87, 90 (Ga. Ct. App. 1989). The "'old house' that was owned by [Brown's] grandparents" was determined by the jury to be wholly destroyed. *Id.* at 88, 90. While *Brown* provides little assistance by way of describing the

extent and nature of the damage to the "old house," the Georgia Court of Appeals held

that Brown's

> evidence showing that it would cost more to repair the house than to
> replace it and photographs submitted into evidence [by the insurer]
> showing that the house was substantially gutted by the fire was sufficient
> to authorize the jury's finding that the house was 'wholly destroyed by fire'
> as contemplated by [Georgia's Valued Policy statute].

*Id.* at 90.

To streamline these two cases, Georgia law provides two ways in which a

"wholly destroyed" determination may be made: (1) the submitted evidence makes it

indisputably clear that a house is "substantially gutted" by fire damage, or (2) the

admissible evidence shows that it costs more to repair a house than to replace it. *Id.*; *see*

*also Huckaby[9] v. Travelers Prop. Casualty Co. of Am.*, No. 5:10–CV–299(MTT), 2011 WL

6300569 (M.D. Ga. Dec. 16, 2011).

Here though, Plaintiff never provided any advance notice to Allstate that he or

Mr. Turner would be providing testimony akin to expert testimony proffered by a

construction expert that, in their respective opinions, the mobile home was "wholly

destroyed by fire." And, due to that failure, the Court could not allow either witness to

offer such testimony. Just as in *Hollingsworth*, Plaintiff "has no figure to assess whether

---

[9] In *Huckaby v. Travelers Property Casualty Company of America*, the plaintiff contended that "the Huckaby
Road house was 'completely demolished[,]' that 'two-thirds of the house has walls standing[,] [and that]
[y]ou can *see straight through the house.*'" No. 5:10–CV–299(MTT), 2011 WL 6300569, at *8 (M.D. Ga. Dec.
16, 2011) (denying summary judgment based on contention that "there can be no total loss so long as a
remnant of the structure is standing") (emphasis added).

the cost to repair exceeds the cost to replace." 2019 WL 1103414, at *6; *see* [Doc. 81, Transcript of Proceeding, p. 40:3–5 ("[W]e probably never really qualified [Mr. Turner] as a construction expert.")]. Not only that, "the photographs in the record simply do not show that the [mobile home] was substantially gutted by fire." *Hollingsworth*, 2019 WL 1103414, at *6. With respect to the photographs submitted into evidence, they—along with the testimony that the mobile home was "still intact"—do not support a finding or conclusion that it was a "total loss" or "wholly destroyed by fire." [Doc. 81, Transcript of Proceeding, p. 32:19]; *see generally* [Doc. 86-4]; [Doc. 87-13]; [Doc. 90-3]; [Doc. 90-5]. Therefore, Plaintiff's only remaining avenue to prove the extent of his loss is to provide *admissible* expert opinion testimony to aid the trier of fact to determine if the repair costs surpassed the value of the property.

At trial, Plaintiff argued (with respect to Mr. Turner) that "within the range and scope of what [Mr. Turner] observed and the background that he has indicated he had, . . . [it] would be a valid question, which is basically can he give [the Court] an opinion as to whether or not the [mobile home] was a total loss." [Doc. 81, Transcript of Proceeding, p. 40:5–9]. Having the ability to weigh the evidence as the trier of fact, the Court has no doubt that Mr. Turner was likely qualified to render expert opinion based on his experience in the construction industry. [*Id.* at pp. 39:8—42:17]; [Doc. 88, Transcript of Proceeding, pp. 7:25—8:6]. In fact, the Court said as much during trial: "[Mr. Turner] certainly has a lot of experience based on what he's told me." [Doc. 81,

Transcript of Proceeding, pp. 40:15–16, 42:12–13]. Experience, clearly wasn't the issue. Notice, as required by the Federal Rules of Civil Procedure for discovery, was the issue. As the Court put it: "Well, I think we have two separate issues here. Whether [Mr. Turner] can give that opinion is separate from whether [Plaintiff] told [Allstate] prior to trial he was going to give that opinion." [*Id.* at p. 40:10–13]. Thus, the major pitfall of Plaintiff's case wasn't because Mr. Turner was unqualified to give expert opinion testimony or because Plaintiff's supposed construction career fell short. Instead, it was Plaintiff's failure to properly provide Allstate pretrial notice that he and Mr. Turner would be offering testimony of that nature—that in their *opinion*, the mobile home was a "total loss."

### 2.    Expert Disclosure Requirements for the Federal Rules of Civil Procedure

The Federal Rules of Civil Procedure require a party seeking to present expert testimony make certain disclosures. Fed. R. Civ. P. 26(a)(2). Specifically, Rule 26(a)(2)(D) provides, in relevant part: "A party must make [disclosures of expert testimony] at the time and in the sequence the court orders." Fed. R. Civ. P. 26(a)(2)(D). In this case, the Amended Scheduling Order [Doc. 13] required Plaintiff to "disclose the identity of any expert witness on or before March 14, 2019[,]" and stated that "[e]xpert reports shall comply with Federal Rule of Civil Procedure 26(a)(2)(B)." [Doc. 13, pp. 1–2]. "Any supplemental expert reports" had to be "served on or before April 30[, 2019]." [*Id.* at p. 2]. Based on how the pretrial and trial proceedings progressed, it was clear that Plaintiff

never disclosed to Allstate that he intended to use either himself or Mr. Turner as experts qualified to testify on specialized knowledge within the construction industry. The only expert report Plaintiff provided to Allstate concerned Mr. Turner's expertise as a fire investigator; but that report pertained only to Mr. Turner's testimony regarding the origin and cause of the fire. [Doc. 42].

To that end, Federal Rule of Civil Procedure 37 provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Since Plaintiff failed to disclose Mr. Turner's proposed expert testimony (save for the noticed opinions from Mr. Turner as to the origin and cause of the fire) as well as his own proposed expert testimony relating to opinions that the mobile home was a total loss, the Court excluded their opinion.

Three times Mr. Turner tried to offer his opinion that the mobile home was a total loss or wholly destroyed by the fire, and three times the Court ignored it pursuant to Rule 37. *See, e.g.,* [Doc. 81, Transcript of Proceeding, pp. 38:14–17, 41:6–9]; [Doc. 88, Transcript of Proceeding, p. 15:1–3]. Plaintiff failed to provide appropriate notice under Rule 26(a)(2)(B) to Allstate that he was going to elicit expert opinion-oriented testimony from Mr. Turner as a retained expert, *see* [Doc. 42, p. 2], and the Federal Rules of Civil Procedure don't allow him to spring such testimony on Allstate at the last minute,

much less during trial. [Doc. 81, Transcript of Proceeding, pp. 40:3–5, 41:12–18, 42:7–12]; [Doc. 88, Transcript of Proceeding, p. 112:15–17]; *see Torres v. Wal-Mart Stores East, L.P.*, --- F. Supp. 3d ----, 2021 WL 3634632, at *10 (S.D. Fla. Aug. 17, 2021) (noting that retained experts must file a "full report under Rule 26(a)(2)(B)" and non-retained experts need "submit only a written summary" under Rule 26(a)(2)(C)). Consequently, Mr. Turner could not provide any opinion as to whether the mobile home was "wholly destroyed by fire." O.C.G.A. § 33-32-5(a).

For the same reasons, Plaintiff can't act as his own expert and offer expert testimony, even though he repeatedly insisted he was only offering lay testimony. Had Plaintiff's testimony been textbook, lay-opinion testimony it would have been admissible under Federal Rule of Evidence 701 without any need for him to comply with Rule 26(a)(2)(C). *See United States v. An Easement and Right-of-Way Over 6.09 Acres of Land*, 140 F. Supp. 3d 1218, 1244 (N.D. Ala. Oct. 21, 2015). Unfortunately, though, that wasn't how the testimony unfolded at trial.

The Court begins this analysis by noting that its gate-keeping role required by Federal Rule of Evidence 702 with respect to expert testimony "does not always apply to opinion testimony by a witness as it relates to the value of his own land or property." *United States v. Easements and Rights-of-Way Over a Total of 15.66 Acres of Land*, 315 F. Supp. 3d 1353, 1371 (N.D. Ga. May 3, 2018); *Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1245–46 (11th Cir. 2018). Testimony pertaining to the value of one's property

"might qualify as lay opinion testimony under Rule 701" and, as just mentioned, omit any need for compliance with Rule 26(a)(2)(C). *15.66 Acres*, 315 F. Supp. 3d at 1371.

Rule 702 "makes expert opinion testimony admissible only 'if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Williams*, 889 F.3d at 1245 (citation omitted). These three factors ensure that "speculative and unreliable opinions do not reach the [trier of fact]." *Id.* Rule 701, on the other hand, "does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*." *15.66 Acres*, 315 F. Supp. 3d at 1371 (quoting *6.09 Acres*, 140 F. Supp. 3d at 1241–42). "Thus, within the testimony of a single witness, one opinion may" be admissible, lay opinion under Rule 701 "and the other" may be a proffer of expert opinion under Rule 702. *6.09 Acres*, 140 F. Supp. 3d at 1241. When there is a possibility of such testimony, "distinguishing between lay and expert opinion . . . is critical[]" because "[l]ay opinion testimony is admissible to only help the [trier of fact] . . . . understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts of events." *Id.*

Sure, Plaintiff may have experience pulling trailers, but he even admitted that he had never moved a mobile home. [Doc. 88, Transcript of Proceeding, p. 67:10–11]. Moving a mobile home "is not common knowledge of a layman." [*Id.* at p. 71:6–7].

24

Moving a mobile home "is, by definition, special skilled expertise and training." [*Id.* at p. 71:7–8]. Time and time again, Plaintiff's testimony began to trickle into testimony "based not on commonly understood considerations of worth flowing from his perceptions and knowledge of his property but instead on technical [and] specialized knowledge" from his alleged "years in [the] construction" industry. *6.09 Acres*, 140 F. Supp. 3d at 1242; [Doc. 88, Transcript of Proceeding, p. 63:24–25]. Plaintiff never argued, told the Court, or otherwise proved that he provided the "less extensive" summary report required by Rule 26(a)(2)(C) in an attempt to properly give Allstate notice that his testimony might cross the line into expert-testimony territory. *15.99 Acres*, 315 F. Supp. 3d at 1372.

Yes, the Eleventh Circuit has "[a] long line of precedent establish[ing] a general rule . . . that 'an owner of property is competent to testify regarding its value.'" *6.09 Acres*, 140 F. Supp. 3d at 1239 (citing cases). However, this seemingly wide-open gate "does not mean that [Plaintiff] has *carte blanche* to espouse any opinion he pleases on the value of [the mobile home], free from the constraints of Rule 702 . . . ." *Id.* at 1242. Overlooking the fact that Plaintiff isn't the "owner" of the mobile home, whether he was competent to provide lay testimony as to its value really wasn't ever disputed. He is, after all, a possessor with a pecuniary interest. [Doc. 81, Transcript of Proceeding, p. 263:16–18]; *cf. Baumgartner*, 244 F. Supp. 3d at 1366. Even if Allstate had disputed Plaintiff's lay testimony, it would've made no difference to the Court when it came to

Plaintiff offering appropriate Rule 701 testimony since it—as the trier of fact—is allowed to assesses witness credibility under Rule 52(c). So, it was basically a non-issue for Plaintiff to give his opinion under Rule 701 about how much the mobile home may have been worth at the time of the fire, but that's only one part of the equation. When Plaintiff's testimony transitioned from Rule 701 testimony to Rule 702 testimony in an attempt to offer the other part of the equation—his non-noticed, expert opinion as to how much he "anticipate[d] . . . it would cost [him] to repair the [mobile] home to try and restore it[]"—the Court was bound by Rule 702 to exercise its gate-keeping role and close the gate to that testimony. [Doc. 88, Transcript of Proceeding, p. 62:16–17].

If Plaintiff wanted to serve as his own expert, Rule 26(a)(2)(C) required him to supply a disclosure to Allstate stating the subject matter on which he "expected to present evidence under Federal Rule of Evidence 702, 703, or 705" as well as "a summary of the facts and opinions to which [he] . . . expected to testify." *6.09 Acres*, 140 F. Supp. 3d at 1244 (quoting Fed. R. Civ. P. 26(a)(2)(C)). He simply didn't do that, and the Court, during trial, would not and could not overlook such a large procedural misstep. [Doc. 88, Transcript of Proceeding, pp. 62:16—63:4)]. The purpose of Rule 26 is to safeguard against surprise, and Rule 37 gives the Court discretion to exclude untimely submission of expert reports. *Warren v. Delvista Towers Condominium Ass'n.*, No. 13–23074–CIV, 2014 WL 3764126, at *1 (S.D. Fla. July 30, 2014) (citing *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992)); *Bearint ex rel. Bearint v. Dorell Juv. Grp.*,

*Inc.*, 389 F.3d 1339, 1348–49 (11th Cir. 2004). Clearly, Allstate was surprised by Plaintiff's attempt to offer expert testimony as to whether the mobile home was a total loss as well as his attempt to elicit that same testimony from Mr. Turner. [Doc. 81, Transcript of Proceeding, p. 38:20–21 ("Never been revealed prior to 10 seconds ago.")].

In contrast to untimely expert disclosures, Plaintiff—when it comes to opinions on whether the mobile home was a total loss or opinions regarding the costs of repair it—never made any expert disclosure at all. *Compare 15.99 Acres*, 315 F. Supp. 3d at 1372 *with 6.09 Acres*, 140 F. Supp. 3d at 1244–45. He never made the requisite disclosure that Mr. Turner might give expert construction[10] testimony under Rule 26(a)(2)(B), and he never provided the "less extensive" summary for his own expert testimony as a non-retained expert under Rule 26(a)(2)(C). As a result, Georgia's Valued Policy statute never comes into play. The photographs submitted into evidence do not show that the mobile home was "substantially gutted," *see, e.g.*, *Huckaby*, *supra*, because you certainly can't "see through" it. *See generally* [Doc. 86-4]; [Doc. 87-13]; [Doc. 90-3]; [Doc. 90-5]. On top of that, there is no evidence by which the Court—as the trier of fact—could determine whether it would cost more to repair the mobile home than it would to replace it. [Doc. 81, Transcript of Proceeding, p. 40:19–22].

---

[10] Sure, the value of the mobile home may be readily ascertainable, but because there is no evidence that it was "substantially gutted" by fire, more is required under Georgia law. Without evidence as to the cost of repair there is no way for the Court to make the *Brown* comparison. 385 S.E.2d at 90. There is simply no evidence in the record showing that it would cost Plaintiff more to repair the mobile home than to replace it.

Bottom line, without any admissible evidence of damages, the Court has no choice but to grant judgment in Allstate's favor. Despite Plaintiff's insurable interest—however much that is—there is no evidence in the record showing the Court that he is entitled to recoup the limits of his insurance policy with Allstate, or as he claims, "the damages to [the mobile home] in the amount of at least $155,000[.]" [Doc. 1, p. 4, ¶ 13]. Accordingly, the Court **GRANTS** Allstate Indemnity Company's oral Motion for Judgment on Partial Findings pursuant to Federal Rule of Civil Procedure 52(c).

## PLAINTIFF'S MOTION TO VOLUNTARILY DISMISS WITHOUT PREJUDICE

Ostensibly realizing the gravity of his failure to comply with Rule 26 and the hurdle it presented for his ability to put forth any evidence for damages relating to the structure of the mobile home, Plaintiff filed a Motion to Dismiss Without Prejudice [Doc. 82], four days after Court wrapped up the second day of trial. As grounds for his dismissal motion, Plaintiff states that he "received several adverse rulings . . . involving opinion evidence."[11] [Doc. 83, p. 1].

---

[11] Plaintiff also argues that "it would be extremely unjust not to permit him to have the opportunity to retry this case" due to him learning "the day before" trial reconvened on August 30, 2021, "about arsons being committed in his neighborhood." [Doc. 83, pp. 1–2]; [Doc. 88, Transcript of Proceeding, p. 38:7–8 ("To learn about this serial arsonist is something we learned yesterday.")]. Plaintiff further states that he is investigating "those occurrences as he believes there is a likelihood that it affects this case." [Doc. 83, p. 1]. It appears that Plaintiff effectively wanted a continuance and for the Court to reopen discovery for newly discovered evidence. But that wasn't the course of action he chose. Plaintiff never asked for the case to be continued; rather, he attempted to offer the evidence about the supposed arsonist in his case-in-chief. [Doc. 88, Transcript of Proceeding, pp. 33:9—35:3]. And although the Court did not allow the evidence, it did allow Plaintiff to make an evidentiary proffer regarding the supposed arsonist in order to "make the record" complete. [*Id.* at pp. 35:4–6; 38:13–41:18].

Nevertheless, Plaintiff moves the Court to dismiss this case without prejudice under Federal Rule of Civil Procedure 41(a)(2) so that he may take advantage of a unique Georgia statute that would allow him to refile it within six months, even though the applicable statute of limitations has long run. That statute states:

> When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal[.]

O.C.G.A. § 9-2-61(a). In *Arias v. Cameron*, the Eleventh Circuit dealt with this very statute. 776 F.3d 1262 (11th Cir. 2015).

Rule 41(a) counsels two circumstances of voluntary dismissal. The first, Rule 41(a)(1), allows dismissal without a court order if the opposing party hasn't served either an answer or a motion for summary judgment. Fed. R. Civ. P. 41(a)(1). Rule 41(a)(2), on the other hand, requires a court order founded "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "Voluntary dismissal without prejudice" therefore, is "not a matter of right." *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2nd Cir. 1990). "Rule 41(a)(1)" only "preserves th[e] unqualified right of" a plaintiff's "dismissal without prejudice *prior to*" a defendant filing an answer. *Cone v. West Virginia Paper Co.*, 330 U.S. 212, 217 (1947).

To begin, it must be noted that "[t]he decision of whether to grant a voluntary dismissal pursuant to Rule 41(a)(2) . . . falls within the sound discretion of the district

court." *Arias*, 776 F.3d at 1268; *Pontenberg v. Boston Sci. Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001) (citing *McCants v. Ford Motor Co.*, 781 F.2d 855, 857 (11th Cir. 1986)) ("The district court enjoys broad discretion in determining whether to allow voluntary dismissal under Rule 41(a)(2)."). Given the procedural posture of this case, Rule 41(a)(2) undoubtedly requires Plaintiff to "obtain permission" from the Court before he can voluntarily dismiss his case. *Arias*, 776 F.3d at 1268. The Eleventh Circuit's guidance to district courts when considering motions to voluntarily dismiss, like this one, is clear. "Generally speaking, a motion for voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice other than the mere prospect of a second lawsuit." *Id.* (citations omitted). Further, the fact that Plaintiff may "obtain some tactical advantage over [Allstate] in" a renewed lawsuit, "is no bar to a voluntary dismissal." *Goodwin v. Reynolds*, 757 F.3d 1216, 1219 (11th Cir. 2014). Thus, the predominating inquiry is whether Allstate would "lose any substantial rights by the dismissal." *Arias*, 776 F.3d at 1268–69. After all, Rule 41(a)(2) "exists chiefly" for the "protection of defendants[.]" *Id.* at 1269; *see also McCants*, 781 F.2d at 857 ("Thus[,] a district court considering a motion for dismissal without prejudice should bear in mind principally the interests of the defendant, for it is the defendant's position that the court should protect.")

 While the Eleventh Circuit doesn't necessarily rely on a list of factors to decide dismissal motions made under Rule 41(a)(2), some courts have previously considered:

(1) the length of time and amount of resources spent by the defendant litigating the case, (2) dilatory tactics by the plaintiff, (3) an insufficient explanation of the need for dismissal by the plaintiff, and (4) whether the defendant had a motion for summary judgment pending when the dismissal was requested.[12] *Manhattan Constr. Co. v. Phillips*, No. 1:09–cv–1917–WSD, 2012 WL 13001896, at *5 (N.D. Ga. Sept. 28, 2012) (citing cases). With deference to "the relevant equites" and an eye to "do[ing] justice between the parties," per the Eleventh Circuit's guidance and the factors just listed, the Court considers whether Plaintiff's dismissal motion should be granted. *Id.*; *Arias*, 776 F.3d at 1269.

  If the Court grants Plaintiff's dismissal motion, he will be able to refile this insurance-coverage dispute within six months and relitigate this entire case all over again. In other words, Plaintiff gets a "second bite at the apple." *Transmax Prods., LLC v. Swartzberg*, No. 1:19-cv-03568-SDG, 2020 WL 9550002, at *2 (N.D. Ga. Dec. 22, 2020). As Plaintiff argues, *Arias* clearly stands for the proposition that courts have no issue with the fact that O.C.G.A. § 9-2-61(a) affords plaintiffs a windfall six-month statute of limitations extension. *Id.* at 1272–73; [Doc. 83, p. 3]. But an extended limitations period

---

[12] The Second Circuit, however, has listed several factors to aid its district courts when considering motions made pursuant to Rule 41(a)(2).

   Factors relevant to the consideration of a motion to dismiss without prejudice include the plaintiff's diligence in bringing the motion; any "undue vexatiousness" on plaintiff's part; the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss.

*Zango v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990).

isn't the real issue here. "Under the circumstances of this case[,]" the issue isn't that Allstate will "lose [a] substantial right" such as a defense based on the statute-of-limitations. The prejudicial focus here is much bigger than that.

As discussed in great detail above, Plaintiff failed to comply with Rule 26, and that failure created pitfall after pitfall for his ability to adequately present his case. Plaintiff directs the Court to *Cone v. West Virginia Pulp & Paper Company*, for the premise that voluntary dismissals "can be permitted at the motion for directed verdict stage." 330 U.S. at 217; [Doc. 83, p. 3]. Assuming for argument's sake that Rule 50 and Rule 52 are at the same procedural fork in the road when it comes to jury trial and non-jury trial proceedings, *Cone* also reminds the Court to heed whether "[a] defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Id*. That part's easy, the fact that Allstate would have to relitigate this insurance-coverage dispute all over again is not the reason the Court sees fit to deny Plaintiff's dismissal motion. As the Eleventh Circuit has explained, "the mere attempt to avoid an adverse . . . judgment . . . in and of itself, particularly where there is no evidence of bad faith, does not constitute plain legal prejudice." *Arias*, 776 F.3d at 1273.

What's happening in this case is indisputably clear. Plaintiff's true reason in asking for the legal do-over after resting his case shines through—he wants a chance to wipe the procedural slate clean so that he can properly notice experts under Rule 26 and effectively nullify, in his words, the "several adverse rulings on admissibility of

evidence . . . involving opinion . . . ." [Doc. 83, p. 1]. But, if Plaintiff doesn't like the Court's adverse rulings or feels that the Court made them in error, his remedy is to appeal. Then, if the Eleventh Circuit determines that the Court wrongly excluded his proffered opinion-based evidence, he will get his legal "do-over." That said, it must be remembered that the Court's scheduling orders *twice* made Plaintiff aware of his duty to disclose the nature and identity of any expert witness.[13] [Doc. 6, pp. 5–6]; [Doc. 13, pp. 1–2]. Plaintiff undoubtedly knew of his obligations under the Federal Rules of Civil Procedure, and to allow him to fix these shortcomings in a renewed lawsuit, in the middle of trial, is simply too prejudicial to Allstate and skirts not only the contours of Rule 41(a)(2) but the notions of fair play.

Most, if not all the cases the Court has studied related to dismissal motions under Rule 41(a)(2) involve cases at the early stages of litigation. *Transmax*, 2020 WL 9550002, at *2 ("Although this case has been pending for more than one year, it is still in its early stages.); *Arias*, 776 F.3d at 1273 ("[T]his circuit has declined to adopt a bright-line rule precluding a district court from granting a Rule 41(a)(2) voluntary dismissal without prejudice when a motion for summary judgment is pending."); *Goodwin*, 757 F.3d at 1219–21 (discussing a plaintiff's choice to move for voluntarily dismissal following the

---

[13] The Court also held a telephone conference to address Plaintiff's lack of expert disclosures. The Court was very patient with Plaintiff, giving him considerable extensions of time to comply. [Doc. 12, p. 1]. Moreover, during the pretrial conference, the Court also disallowed two other proposed experts on damages for the exact same reason—no expert witness disclosures. *See* [Doc. 64, p. 2] *in connection with* [Doc. 60-1, pp. 3–4].

removal of the lawsuit from state to federal court); *Golden v. Floyd Healthcare Mgmt. Inc.*, No. 4:18-cv-157-MLB, 2021 WL 3861183, at *1–2 (N.D. Ga. Aug. 30, 2021) (allowing voluntary dismissal after extensive discovery but before trial).

It has to be remembered that this case was halfway through trial, and Plaintiff had fully presented his case-in-chief. Because the "suit ha[d] progressed" *that far*, the Court cannot square Plaintiff's reasoning for voluntarily dismissal (adverse evidentiary rulings) with the "legal prejudice" that would befall Allstate if he got a chance to do this all over again. *Zagano*, 900 F.2d at 14; *Arias*, 776 F.3d at 1268. Most notably, in his briefing of the motion, Plaintiff never showed the Court any case where another district court granted a plaintiff's request to voluntarily dismiss a case *after* it had been fully presented *at trial* primarily because the Court didn't rule with him on important evidentiary issues. If that were to be allowed, a plaintiff could simply dismiss his case any time he disagreed with a court's ruling or committed some strategic or tactical error during the presentation of his case. Wiggling out of adverse evidentiary rulings at the directed-verdict stage or upon a motion for judgment on partial findings because a party patently failed to comply with the Federal Rules of Civil Procedure just doesn't strike the Court as either fair or just.

That said, relying on the plain language of Rule 41(a)(2), the Court finds that permitting dismissal under the circumstances of *this case* would not be "on terms that the court considers proper[,]" and the Court exercises its considerable discretion to

**DENY** Plaintiff's Motion to Dismiss Without Prejudice [Doc. 82]. Fed. R. Civ. P. 41(a)(2);

*Pontenberg*, 252 F.3d at 1255.

## CONCLUSION

Based on the foregoing Findings of Fact and Conclusions of Law made in

accordance with Rule 52(a), the Court **GRANTS** Allstate Indemnity Company's oral

Motion for Judgment on Partial Findings pursuant to Rule 52(c) and **DENIES** Plaintiff's

Motion to Dismiss Without Prejudice [Doc. 82]. Accordingly, the Court **DIRECTS** the

Clerk of Court to enter Judgment in favor of Allstate Indemnity Company and **CLOSE**

this case.

**SO ORDERED**, this 29th day of September, 2021.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**